## MONTGOMERY v. UNITED STATES.

*(Circuit Court, D. Oregon. September 3, 1888.)*

1. COURTS—FEDERAL COURTS—JURISDICTION—CLAIMS AGAINST UNITED STATES—PUBLIC LANDS.

    The word "claim," as used in the act of 1887, (24 St. 505,) giving this court jurisdiction to hear and determine certain claims against the United States, includes a "claim" by a purchaser of timber land under the act of 1878 (20 St. 89) to have a patent issue for the same. The ruling in *Jones v. U. S.*, 35 Fed. Rep. 561, affirmed.

2. PUBLIC LANDS—SALE OF TIMBER LAND—WHEN COMPLETE.

    A sale of timber land under the act of 1878, by the register and receiver of the local land-office, is completed on the payment of the purchase price, and the delivery of the certificate or receipt therefor; and it is not necessary that the same should be ratified or confirmed by the commissioner of the general land-office; but it is the duty of such commissioner, on receiving "the papers and testimony in the case" from the local land-office, if it appears *prima facie* therefrom that the law has been complied with, to cause a patent to issue thereon to the purchaser.

3. SPECIFIC PERFORMANCE—JURISDICTION—PUBLIC LANDS.

    A court of equity has jurisdiction of a suit to compel the specific performance of a contract to convey land, without reference to the locality of the same; and this court has jurisdiction, under the act of 1887, of a suit against the United States to compel the issue of a patent to a purchaser of timber land under the act of 1878, although the same is situate in Washington territory.

*(Syllabus by the Court.)*

Suit to Compel the Issue of a Patent.

*W. Scott Beebe* and *James K. Kelly*, for plaintiff.

*Lewis L. McArthur*, for defendant.

DEADY, J. This suit is brought under the act of March 3, 1887, (24 St. 505,) entitled "An act to provide for the bringing of suits against the government of the United States," to compel the issue of a patent to the petitioner to the S. W. ¼ of section 10, in township 9 N., of range 1 W. of the Wallamet meridian.

It is alleged in the petition that the petitioner resides in Multnomah county, Or., and it appears therefrom that the land in question is situated in Cowlitz county, Wash. T., and is of the value of $5,000, and not more than $10,000; that on October 28, 1882, said land was surveyed public land of the United States, and subject to entry and purchase under the act of June 3, 1878, (20 St. 89,) for the sale of timber lands in the Pacific states, including Washington Territory, "and was valuable chiefly for timber, but unfit for cultivation;" that on said October 28th the petitioner was a citizen of the United States, and, having complied with the requirements of said act, and the regulations governing the acquisition of lands thereunder, so as to enable him to pay for the same, and claim a patent therefor from the United States, did on said day, at the United States land-office at Vancouver, Wash. T., purchase said land from the defendant, and did then and there pay to the receiver of said land-office the purchase price therefor, to-wit, the sum of $400, or $2.50 an acre;

and that said receiver gave the petitioner "a certificate or receipt" for said money, as "being in full" for said land.

That the defendant keeps and retains said money; and its servants, whose duty it is to execute and deliver to the petitioner a patent for said land, although often requested, refuse so to do, and deny the right of the petitioner to have the same, or to any interest therein.

The prayer of the petition is that the court will decree that the defendant issue to the petitioner a patent for said land.

Due service was made of the petition, as provided in section 6 of the act of 1887, and the district attorney appears for the defendant, and demurs to the petition.

The causes of demurrer are the same as those that were argued and determined in *Jones* v. *U. S.*, 35 Fed. Rep. 561, decided in this court on July 16, 1888, in which it was held that an applicant for land under the timber act of 1878, "becomes the purchaser thereof when he makes the prescribed proof to the satisfaction of the register, and pays the prescribed price therefor;" and "when the certificate of purchase is issued to the applicant the land described therein becomes his property,—the bare legal title is all that remains in the vendor in trust for the vendee; and if it was the case of a private person, a court of equity would compel him to perform his part of the contract by executing and delivering to the vendee the proper conveyance thereof;" and that "the claim" against the United States for a patent arising on this contract of sale with the petitioner is in its nature "enforceable by a suit in equity in this court for a specific performance of the same; and this brings the petitioner within the act of 1887, which gives her the right to sue the United States on any claim arising on contract, by a suit in equity, as 'if the United States were suable,'—which must mean, as if the United States were a private person;" and, also, (1) that the land in question is without the territorial jurisdiction of the court; and (2) that this sale under the act of 1878 is not binding on the government until it is ratified or confirmed by the commissioner of the general land-office.

As to the second point, it is sufficient to say that the statute provides that on payment of the purchase money "the applicant may be permitted to enter the same. \* \* \* and on the transmission to the general land-office of the papers and the testimony in the case a patent shall issue thereon."

It may be admitted that, notwithstanding the peremptory language of the statute, "the papers and testimony in the case" must show a *prima facie* compliance with the law before the purchaser is entitled to the patent. And if there was any fraud in the proceeding before the local land-office, sufficient to vitiate the purchase, and overcome the *prima facie* case, the government can set it up as a defense to the suit for specific performance, where the rights of the parties may be examined and passed on judicially, as they ought to be.

As to the first point, the objection is founded on a misconception of the nature of the suit. This is not a local action to recover the possession of the land, but a transitory one to enforce the specific performance

of a contract concerning the same. In such a proceeding a court of equity operates by its decree *in personam,* on the defendants, and not *in rem,* on the subject-matter; and therefore it matters not whether the land which is the subject of the contract is within the territorial jurisdiction of the court or not. If the court gets jurisdiction of the parties it has jurisdiction to determine what, if any, contract exists between them, and enforce it against the party in default, and may compel obedience to its decree by proceedings in the nature of punishment for contempt. 3 Pom. Eq. Jur. § 1317; 2 Story, Eq. Jur. § 743.

But, assuming, as I do, that "the claim" of the plaintiff is within the purview of the act of 1887, this court has jurisdiction in this case without reference to the locality of the land, simply because congress by that act has conferred it. The petitioner is required to bring his suit, not in the district where the land is situated, but in that in which he resides. The United States is potentially existent or resident throughout the states and territories, and agrees by the terms of the act to submit to the jurisdiction of the court in which the suit is brought, on due notice thereof being given to its attorney and representative. And thus the court gets jurisdiction of the parties and the cause, and it is immaterial, either under the statute or the general principles of equity jurisdiction, where the land for which the patent is sought may lie.

The demurrer is overruled.